1329 United States v. Kasimov. Mr. Gupta. Good afternoon, your honors. May it please the court. Amit Gupta for Mr. Kasimov. I'm going to be focusing today on point two in our appellate brief, and if time permits me, I will also address point one. The remaining by talking about what wouldn't constitute sufficiency in this case. The government establishing Mr. Kasimov's mere association with individuals who were involved in some sort of criminal activity is necessarily insufficient. The government establishing that Mr. Kasimov shared political sympathies with one of many of the numerous groups the government's case established to be operating in Syria involved in jihadist activities would be necessarily insufficient. The government establishing that Mr. Kasimov provided money to somebody who was going to fight for ISIS in Syria would be sufficient, right? If they established that Mr. Kasimov knew that that person was going to fight for ISIS. I apologize. Real time feed is not working. So I'm not understanding what you're saying. I'm sorry. Let's take a moment. Is the technology working for this? Your Honor, maybe it would be helpful if Mr. Profit was given some time after my oral argument Well, I think the issue is that he has to follow your argument. So would this work if you are transcribing the argument? If you sat in a place where he could look at your transcription with that? Why don't we do that? But either you could move there. He could move whatever is make sense. Thank you, Your Honor. Is there a chair? I think he's going to get a chair. Okay. I think you could just take one of... Maybe, sorry, excuse me, sir, could you move? Who's doing the transcription? Could you move it a little bit just so there's room for it? Is that good? All right, that's great. So with apologies, we'll be flexible about the time, so don't worry about that. Okay, Mr. Gupta. Thank you, Your Honor. So the question I had asked was, it would be sufficient if they showed that Mr. Kasimov had provided money to somebody going to fight for ISIS in Syria, right? It would be sufficient if they proved beyond a reasonable doubt that Mr. Kasimov knew that that person was going to fight specifically for ISIS, not that he was going to... So in fact, we have testimony that he's funding somebody who's going to Syria to fight. And we also have testimony that he defended the legitimacy of the Islamic State established by ISIS, that he told his girlfriend that he wished to live in ISIS, the ISIS-controlled area, that he knew other individuals who were going to fight for ISIS, including his ex-roommate and so on, and also that he had a bunch of ISIS videos on his phone. So with all of that context, if the jury heard testimony that he was funding somebody who was going to Syria to fight, wouldn't a rational jury be able to conclude that that meant going to fight for ISIS? Well, Your Honor, I think part of the problem is that the record has been embellished in the government's case, and some of those facts are not completely accurate descriptions of what came out at the trial. One thing that I specifically want to hone in on is the fact that some of these comments were not even necessarily made prior to arrest. The timing, specifically, of the comment about Mr. Sadat Muttab going to fight, it was ambiguous who he was going to fight for. There was no testimony establishing that that comment was made prior to the arrest. Some of these other comments, it's true, the discussion happened prior to the... Why does that matter? If the testimony is that he was funding him because he was going to Syria to fight, what does it matter? You're saying, well, he was going to fund his trip to Syria and only later discovered it was going to fight? Oh, or to fight for ISIS? The testimony is that he was going to go to Turkey, acquire an AK-47, and then travel along to Syria. I don't think Mr. Kasimov was ever told that he was going to do all of those things. Those things are not... Well, we have testimony that he was also going to acquire that thing, and testimony that the thing referred to an AK-47, right? You might dispute the evidence, but a rational jury could accept the testimony and conclude that it was an AK-47, couldn't it? I think a rational jury would have to conclude that Mr. Kasimov would have realized that he was talking about an AK-47. In many of these cases with the code evidence, for one thing, different codes were used with different co-conspirators. The more damning codes, things like toy or pencil, those were used with other co-conspirators. With Mr. Kasimov, many of the coded language was just, either it was vague language or it wasn't even clear that it was a code. This is a cogent closing argument, but that ship has sailed. The government, I mean, the jury heard the evidence. You're making arguments that certain inferences weren't reasonable, couldn't, shouldn't have been drawn, and so forth and so on. But the government, I mean, the jury concluded otherwise. Well, Your Honor, I would think that the primary distinction here is that this was a wholly circumstantial case. And in Glenn and in Lorenzo, this circuit... Well, he was arrested at the airport with the funds, right? He was, but as far as the specifics of the knowledge evidence and any of the indications of his knowledge, all the evidence that was gathered was circumstantial. I would emphasize, in particular, there was an extensive discussion of the cooperating witnesses' knowledge of this Tea Party group. The jurors charge that they need no distinctions between direct and substantial evidence, right? And circumstantial evidence, right? There's not, but I think the issue is that it's a logical question that if the evidence in this case is circumstantial, the jury necessarily has to make some kind of inference. That's an inherent part of circumstantial evidence. And the question is whether those... The jury's allowed to make inferences, right? Of course. So you're questioning the strength of the evidence, but if the evidence were not just that he knew a lot of people who were going to Syria to fight for ISIS and he defended the legitimacy of the Islamic State and so on, if the evidence were just him saying over and over again, I really want to support lots of people who go fight for ISIS, and then there's evidence that he supported somebody who was going to Syria to fight, you would agree that a jury could infer that going to Syria to fight meant going to Syria to fight for ISIS, right? I think the distinction would be not just a quantitative one, but a qualitative one. These other comments, in particular the stuff about the videos, for example, the government's own case made it very clear that these videos were just widely disseminated. Likewise, a lot of the discussion... Yes, I understand, but if he were a journalist who reported on activities in the Middle East, maybe having a bunch of ISIS videos on his phone might have a different valence. But if, in fact, there's lots of testimony that he really wanted to go support ISIS and live in ISIS-controlled territory, and he had lots of friends who were going to fight for ISIS, and he supported ISIS, isn't there a reasonable inference that he had the videos because he knew about ISIS and had watched the videos and understood what they were about? I think that's something that the government had to establish during its case-in-chief, and I don't think they did. Well, didn't it actually... If all that evidence came in, isn't that an inference that a jury could make? Well, if the government introduced evidence that said that these videos weren't just being produced by journalists, but then those journalists were then taking them and sending them to everyone such that anyone who was even vaguely paying attention to this topic might have had those videos somewhere on their device or their computer, then I don't agree with that. I think that's something that... Just generally, if I said I'm going to Ukraine to fight, do you understand what conflict I'm talking about? I would understand the conflict. I don't think I would know who you're going to fight for. You might know if you knew a little bit about my background and my allegiances, right? Sure. And if I said I'm going to Gaza to fight, you know what conflict I'm talking about, right? I would know what conflict you're talking about. So in the context of when he was saying going to Syria to fight, and a lot of this background about how he wanted to live in ISIS-controlled areas of Syria because you could practice everything in accordance with Islamic beliefs there, and he supported his ex-roommate who went to go fight for ISIS in Syria, and he had all these videos, wouldn't the inference be that he's going to fight in the conflict that everybody knows is going on in Syria, and he has said that he supports people going to fight for ISIS? Well, again, I think there's an issue with the date on some of those statements, but I would point out with regards to his roommates, there was no evidence presented that Mr. Kasimov knew that any of these people were going to fight for ISIS before they went. So what do you think his understanding was? What was the guy going to fight for? To fight for democracy in Syria or something like that? Is that what you mean? I think that's entirely plausible, but I don't know that he necessarily even knew that he was going to fight. Did you suggest that? Was there any evidence that going to fight meant to fight for some other cause that's going on in Syria? I think the government introduced that evidence. They said there were numerous groups fighting in Syria that all had this kind of similar ideology. Right, but did you ever make an argument? Did Mr. Kasimov ever make an argument that I actually thought that this guy was going to fight for one of those other groups? Well, again, I think that was the government's burden, and that was part of the sufficiency analysis that they had. Well, the government, you said, isn't required to disprove every possible alternative theory, right? And you're saying that here, the government didn't prove its case, even though it introduced all this evidence about ISIS, because there's an alternative theory lurking out there that you never argued to the jury and about which you never introduced any evidence. And, Your Honor, I think that would be more compelling if their own expert didn't introduce this essentially alternative theory. So because the expert mentioned that there were other groups besides ISIS operating in Syria, that just undermined their whole case, you're saying? I think it undermines their case to the extent that they didn't establish, they didn't overcome this obstacle that they introduced. And what I would identify specifically is they did do that with the other, or with the guy who was going, with Saeed Akhmetov. They specifically elicited testimony where Saeed Akhmetov talked about the caliphate and how he wanted to support the caliphate, and they said, you know, is there anyone else in Syria who would declare a caliphate? No, it was ISIS. That was definitely a guy going to ISIS. They never made that showing with Mr. Kasimov. It was just his way. Well, Mr. Kasimov did support the caliphate and wanted to live in the caliphate and supported his ex-roommate and other people who were going to fight for ISIS, right? The evidence for that, the specificity of the caliphate, that was never introduced. There were just general comments about making that Islamic law. Well, the comments about, I want to go live in the ISIS-controlled area of Syria because you can practice everything Islamic there, that's what he's referring to, right? I don't think so. The caliphate, as the expert identified, it was the caliphate is not just a government that has Islamic law. It is a government that supposedly is the authority over all Muslims everywhere. Right, but that's what ISIS is establishing when it controls the territory. Right, and that's why Saeed Akhmetov wanted to fight for them. There's nothing like that from Mr. Kasimov. Okay, thank you, Mr. Gupta. You reserved time for rebuttal, so we'll hear from you again. But let's turn to the government. Mr. Pravda. And sorry, just before you start, do we have the setup where you can see the questions that we're asking? Can you turn the screen to the side? If you have to report it, can you just turn the screen in my direction? He has to type on it, though, right? Oh, it's a different, okay, fine, good. Okay. Okay. Thank you. Mr. Pravda. May it please the court, Doug Pravda for the United States, and I represent to the government a trial below. Let me start with the sufficiency argument that we've just been discussing, and I want to respond in particular to the notion that some of these conversations weren't dated, and therefore they don't provide evidence that Kasimov knew at the time he gave the money that Saeed Akhmetov had gone to Syria to fight. First of all, the reference to December 2015 in the transcript, I submit, is an obvious typographical error. And the reason why you know it's a typographical error is because the specific question that was asked by the AUSA who was conducting the examination was, I believe you mentioned by December 2015 you were speaking with the defendant more frequently. That's at 238 of the government appendix. And when you said you mentioned he was asking the witness about testimony that Khabibov had already given in this case. And, in fact, when you look at Khabibov's testimony, there is no prior mention of December 2015, which is not surprising because both Khabibov and Kasimov were arrested in February of 2015. And, in fact, Khabibov had earlier testified that he met Kasimov in 2013. That's 229 of the government appendix. That after meeting Kasimov, he spoke with him a few times a month until they began interacting several times a week in early 2015. That's 231 of the government appendix. So it seems obvious that that's what's being referred to when the AUSA. Okay, so you're saying that we have evidence of a contemporaneous understanding about his support for ISIS and people who went to fight for ISIS, right? But opposing counsel just said, well, we don't have direct evidence. It's all inference. Is that right? So we have testimony that he was told that Saqib Medav Medav was going to fight in Syria. And then the idea is given all the context about his support for ISIS and his understanding about ISIS and about the conflict that's going on in Syria, we should understand that to mean when he says going to Syria to fight, it means going to Syria to fight for ISIS. Is that right? Yes, we do have evidence in the record that all of those conversations that relate to ISIS took place in February 2015. And that evidence is, first of all, Habibov testified that Saqib Medav first told him that he was interested in going to Syria to fight for ISIS in late 2014. That's at 221 of the government appendix. Right, Saqib Medav was telling Habibov that he's going to fight for ISIS, but Habibov told Casimov that Saqib Medav was going to Syria to fight. Well, I'm just leading up to. Okay, go ahead. So that in and of itself doesn't prove Casimov's knowledge, but I'm getting there. Then Casimov, Habibov testifies that Sadat Medav tells him in either late January or early February 2015 that he's ready to travel. And then Habibov testifies that in February 2015 he asks several people to contribute money for Sadat Medav's travel to Syria. He identified Casimov as one of those people. That's 224, 225 of the government appendix. And he's asked specifically, if he didn't know that Casimov had previously given money to support ISIS, why did you ask him to contribute to Sadat Medav specifically? And Habibov testifies that he had conversation with Casimov that led Habibov to conclude that Casimov would support Sadat Medav's plan to travel to Syria to join ISIS. And, in fact, it wouldn't have made any sense for Habibov to only ask Casimov if he would support the travel. If he didn't, if he wasn't going to tell him what Sadat Medav's actual plan was, then they had several conversations. So you're saying that a jury should infer from that that Habibov actually told Casimov that Sadat Medav was going to fight for ISIS? Or that just given all that context, just the statement, going to Syria to fight, meant going to Syria to fight for ISIS? So it's both, it's both, Your Honor. So Habibov said specifically to Casimov, Sadat Medav going to Syria to fight. He doesn't remember if he used the word for ISIS. He said that he used a number of different terms interchangeably to refer to ISIS, including Islamic State, caliphate, brothers, sham, and other words, and that those are all used interchangeably to refer to ISIS. In context, the question really was, did he use the word for ISIS as opposed to using words, you know, some other term to refer to ISIS? But let's assume, if he said for ISIS, then we're done, because the jury could easily just direct evidence of Casimov's knowledge. But let's assume for the sake of the argument that he didn't say for ISIS and he only said going to fight. That conversation happens in the context of other conversations where Habibov is saying to Casimov about, talking to Casimov about the Islamic State. So there's a conversation about the legitimacy of the Islamic State that happened in Casimov's apartment on Coxy Avenue in Brooklyn, which is an apartment that there's testimony that he lived in through the time that he was arrested in February 2015. Okay, so you're saying that the jury could credit either Habibov's testimony that I communicated to him that he was going to fight for ISIS because we talked about ISIS in lots of different ways, or even if they didn't credit that testimony, they could also conclude that given the whole context of their conversations where they talk a lot about ISIS and Casimov talks a lot about ISIS, somebody saying going to Syria to fight meant going to Syria to fight for ISIS. That's correct, and in that same conversation that took place in Casimov's apartment, it was that very same conversation in which Casimov raised the fact that his ex-roommate, that was Mossad Kandich, had gone to Syria and was fighting in Syria. Okay, so Mr. Gupta says, but the government's expert said, that lots of groups were operating in Syria, and with that evidence before the jury, why shouldn't it have concluded that maybe he was going to fight for a different group in Syria? So what about that? So the government's expert testified, and I want to be really precise here, that starting in 2011, this conflict, this civil war in Syria grew, and there were other groups fighting in Syria, but there was no testimony at this trial that Casimov was aware of any other groups that were fighting in Syria. All of the testimony at this trial related to Casimov's knowledge of ISIS and the fact that ISIS was fighting in Syria. And so after Casimov raised the fact that his ex-roommate, Kandich, had gone to Syria to fight, Habibov brought up a different individual who they both knew who had died fighting in a battlefield in Syria, and Habibov specifically dated that conversation February 2015. And the other reason that you know that the conversation where Habibov asks Casimov to contribute money to Sadat Maqab travel happened before the arrest is because that's in fact what Casimov does. Casimov texts Habibov on February 19th, and he asks, how much did I give for the brother who's leaving? And Habibov responds that he purchased the bus ticket, which is the code word for the plane ticket to Syria, and that he's leaving on the 25th. And then on February 24th, Casimov texts Habibov and he offers to give $500 and then $1,000 and then says how much do you need? And so in the context of all of these other conversations that they're talking about people going to Syria to fight for ISIS, even if you construe Habibov as having said to Casimov only that Sadat Maqab is going to Syria to fight, the context of all those other conversations make clear that that means for ISIS. And when you see the subsequent conduct that Casimov engages in, you know like after a long day of driving a taxi on February 24th, he gathers $1,600, he goes to an ATM, he realizes he can't get all that money, he drives home to Coxy Avenue in Brooklyn, he picks up the $1,600, then he drives all the way to JFK Airport. He parks illegally right outside the departure terminal, runs into the airport, hands $1,600 to Sadat Maqab, all because as he told Habibov, and this is that fact. Those efforts somehow go to the knowledge element about the knowledge of ISIS? Yes, because he says to Habibov that the reason why he did all that was because he actually wanted to see those people, myself, the people who are leaving, like all of these facts together. So you're saying that there's testimony that he is grouping Sadat Maqab in with a bunch of other people that other testimony established were actually going to fight for ISIS. And talking about them all together suggests that he knows that they're all going to fight for ISIS. No, that was not quite the inference that we were asking the jury to draw. So those people referred to Sadat Maqab and another individual that he'd gone with who's actually a confidential source for the FBI, but that's who Kasimov is referring to in that conversation. Although there is testimony, is this right? That Habibov and Kasimov had conversations about putting Sadat Maqab in touch with other people who had gone to Syria to fight, and those people had gone to Syria to fight for ISIS, right? Yes, so Habibov testified at trial that he called Kasimov to reach out to Kasimov to find out if Kasimov had connections in Turkey who could help Sadat Maqab cross the border into Syria. And Habibov testified at trial that he was specifically thinking of Kasimov's ex-roommate, Candace, who was already in Syria fighting at that point in time. Now Kasimov doesn't know some of the people that Habibov mentioned in this conversation, but at one point he does refer to a specific person, Brother Adebek, and says, is that who you're talking about? And there is not a specific reference to ISIS in that conversation, but there is such a vague conversation Habibov's talking about the little brother, we're looking for connections, they have to be here and there, and Kasimov never responds to say, what are you talking about? The same way when he talks to Habibov about the fact that Sadat Maqab is leaving, they just talk about, oh, a brother is leaving, there's no discussion of who it is, there's no discussion of where he's going, because the entire conspiracy was characterized by extreme secrecy. They were not openly talking about ISIS, about Syria, even about Turkey, except in one conversation that did not involve Kasimov that was played at trial. And the immediate reaction was, don't say that on the phone. And so the jury could have inferred from all of this information that Kasimov was aware when he was giving the money that Sadat Maqab was traveling to Syria for the purpose of fighting for ISIS. Okay. Thank you very much, Mr. Paravda. We'll turn back to Mr. Gupta on rebuttal. May I? Yeah, that's fine. Let's just wait a minute for him to get set up.  When you're ready, you're on. Okay. Okay, go ahead. So I want to address this typographical error issue. This wasn't a typographical error. Actually, the docket itself indicates that Mr. Habibov and Mr. Kasimov were actually held together, along with the other co-defendants, all together in MDC. There is nothing that suggests that this conversation wasn't referring to a discussion that they may have had together in jail. Likewise, Mr. Habibov testified to having numerous conversations. He said he couldn't count how many he had with the government itself. So there's nothing that says that this is a typographical error. I think the evidence that's presented—they have to rest on the evidence that they presented. They can't simply argue, oops, we made a mistake. I would also note that some of these comments— Even if it were—putting aside the typographical error thing, even if there is testimony about what Kasimov said in retrospect about what he had understood about what Syed Akhmedov was doing, why would that still be probative of his knowledge at the time? Maybe you're saying it's less probative, but— Well, I think it's obvious— But still it's evidence, right? Oh, I think it's obvious that once everybody gets arrested and once you're told by some of these other people that we're actually part of a criminal conspiracy, it's a different story. What you learn after you've been arrested is not the same as what you knew in advance. And I would note, I mean, Mr. Pravda himself— So your argument is that Kasimov might have thought that he was providing all of this money to Syed Akhmedov at the airport for some innocent purpose, and only later in the jailhouse conversation did he learn to his surprise that he was going to fight in Syria. I think he may have known that there was something shady going on. Habibov himself testified that he had been involved in numerous scams and things like that. But I don't think—again, the case law is clear. They're just being aware that maybe something shady is going on or that there's some kind of potentially criminal behavior taking place. That's obviously— So what's your theory of a competing shady move on the basis of this record? I think one aspect of it is that Mr. Habibov had very clearly been involved in immigration fraud and that Mr. Kasimov himself was undocumented, and I think he may have been worried about the questions regarding immigration, especially if people are traveling. I think there's also the question as, yeah, if we accept these— I'm sorry. What does that mean? That maybe Said Akhmedov was here illegally, and so he thought he needed to give him money to go to Turkey and then on to Syria in order to avoid immigration authorities here? Is that the idea? Or over there, yeah. Or over where? In the Middle East, that if he's traveling. But if he's here, why would that be a threat? Why would you go there if that's where the problem is? I'm sorry. I'm not— I'm saying that Mr. Kasimov may have been aware that some aspect of this plot to send somebody to Syria may not have been lawful and that that's why this was happening informally. But again, I think it was the government's burden to prove not just that there was something shady going on. They had to prove that the shady thing that was going on was that Mr. Kasimov was knowingly contributing to ISIS. I don't think they did. I mean, I would identify even some of these conversations about connections, for example. I don't think Mr. Pravda has accurately described Mr. Kasimov's participation in that conversation. If you read it closely, Mr. Kasimov has no idea what's going on. Every time Mr. Habibov says, do you know this guy? Do you know that guy? Mr. Kasimov's response is like, who are you talking about? He's trying to figure out who he's referring to or what it is. He mentions other people's names and it turns out to be the wrong name. It's not the person Habibov was thinking of. I think if you look at the case law in this circuit about things like furtive language and about coded language, it makes it clear that it's not enough that one of the co-conspirators says something in a code. The other person has to understand it. I don't think that they made that showing. Okay. Thank you, Mr. Gupta. I think we have that argument. The case is submitted.